UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MARQUIS A. DAVIS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:17-cv-364 |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Marquis A. Davis, on September 15, 2017. For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Marquis A. Davis, filed applications for Child Disability Insurance Benefits on November 4, 2013, and Supplemental Security Income on October 25, 2013, alleging a disability onset date of July 28, 1995. (Tr. 9). The Disability Determination Bureau denied Davis' applications on February 6, 2014, and again upon reconsideration on May 7, 2014. (Tr. 9). Davis subsequently filed a timely request for a hearing on July 2, 2014. (Tr. 9). A hearing was held on May 11, 2016, before Administrative Law Judge (ALJ) Robert M. Senander, and the ALJ issued an unfavorable decision on June 8, 2016. (Tr. 9-22). Vocational Expert (VE) Lee O. Knutson and Medical Expert (ME) Michael C. Rabin, PhD testified at the hearing. (Tr. 9). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

Although Davis alleged an onset date of July 28, 1995, the period of consideration before the ALJ began on the day before Davis' 18th birthday, July 27, 2013, for the Title II application and October 25, 2013, regarding the Title XVI application. (Tr. 9). To be entitled to child's insurance benefits, an individual must have a disability that began before attainment of age 22. (Tr. 9).

At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Davis had not engaged in substantial gainful activity since July 28, 1995, the alleged onset date. (Tr. 12).

At step two, the ALJ determined that Davis had the following severe impairments: asthma, borderline intellectual functioning, specific learning disorder (reading and math), and depression disorder NOS. (Tr. 12). The ALJ determined that Davis' physical impairments, considered singly and in combination, more than minimally limited his ability to perform basic work activities. (Tr. 13). Additionally, the ALJ found that in assessing Davis' mental impairments, he had a moderate limitation in at least one broad area of functioning. (Tr. 13). Thus, the ALJ concluded that Davis' physical and mental limitations were severe impairments. (Tr. 13).

At step three, the ALJ concluded that Davis did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14). The ALJ considered Davis' impairments against the following criteria: Listing 3.03, asthma; Listing 12.04, affective disorders; and Listing 12.05, borderline intellectual functioning. (Tr. 14). The ALJ indicated that neither Davis' treating or examining physicians, nor the State agency medical consultants indicated findings that would satisfy the severity of a listed impairment. (Tr. 14).

As for Davis' asthma, the ALJ determined that although Davis had some difficulty breathing after exertion and that he regularly used his albuterol and inhaler, he was able to manage his asthma well and did not require physician intervention. (Tr. 14). Therefore, the ALJ concluded that the criteria of Listing 3.03 was not met. (Tr. 14).

Next, in finding that Davis did not meet Listing 12.04, the ALJ considered the paragraph B criteria for mental impairments which required at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 14). The ALJ defined a marked limitation as more than moderate but less than extreme and repeated episodes of decompensation, each of extended duration, as three episodes within one year or once every four months with each episode lasting at least two weeks. (Tr. 14).

The ALJ determined that Davis had a moderate restriction in activities of daily living, a mild restriction in social functioning, and a moderate restriction in concentration, persistence, or pace. (Tr. 14-15). However, Davis had not experienced any episodes of decompensation. (Tr. 14). Because Davis did not have two marked limitations or one marked limitation and repeated episodes of decompensation, the ALJ determined that he did not satisfy the paragraph B criteria. (Tr. 15). Additionally, the ALJ found that Davis did not satisfy the paragraph C criteria. (Tr. 15).

Finally, the ALJ considered Davis' borderline intellectual functioning under the requirements of Listing 12.05. (Tr. 15). Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e,* the evidence demonstrates or supports onset of the impairment before age 22. (Tr. 15). The ALJ indicated that Davis was able to manage his own personal care

and perform household chores. (Tr. 15). Additionally, prior to the relevant period Davis underwent cognitive testing and achieved a full-scale IQ score of 72. (Tr. 15). Thus, based on those findings, the ALJ concluded that Davis' borderline intellectual functioning did not meet the criteria set forth in Listing 12.05. (Tr. 15).

After consideration of the entire record, the ALJ then assessed Davis' residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with certain non-exertional limitations. Specifically, the claimant must avoid concentrated exposure to pulmonary irritants, such as gases, dust, fumes and poor ventilation. He can have occasional brief and superficial contact with coworkers and supervisors. He cannot engage in teamwork or tandem tasks and he cannot have contact with the general public. He retains the sustained concentration, persistence and pace necessary for simple work of a routine and repetitive type.

(Tr. 16). The ALJ explained that in considering Davis' symptoms he followed a two-step process. (Tr. 16). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Davis' pain or other symptoms. (Tr. 16). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Davis' functioning. (Tr. 16).

Davis alleged that he was unable to work due to his limited understanding, concentration, and ability to interact with others. (Tr. 16). Additionally, he reported that he suffered headaches that occurred often. (Tr. 16). The ALJ determined that his medically determinable impairments reasonably could be expected to cause the alleged symptoms. (Tr. 17). However, his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 17).

In December of 2013, Davis underwent a consultative examination with Sroaj Arora, MD. (Tr. 17). He reported a history of asthma and stated that he generally had problems during the springtime. (Tr. 17). Dr. Arora's physical examination showed no positive findings. (Tr. 17).

As for Davis' mental health, he began seeking counseling in July of 2014 and reported wanting to be more independent and outgoing. (Tr. 17). Davis met with his therapist, Adam Scartozzi, LMHC regularly. (Tr. 17). Scartozzi submitted an assessment of Davis' mental health. (Tr. 18). He opined that Davis was unable to meet competitive standards in three tasks, including: his ability to ask questions or request assistance; his ability to deal with normal work stress; and his ability to interact appropriately with the public. (Tr. 18). The ALJ assigned great weight to Scartozzi's opinion. (Tr. 18).

The ALJ also addressed some of Davis' cognitive issues. (Tr. 18). The ALJ noted that Davis underwent cognitive testing at age 15 and achieved a full-scale IQ score of 72. (Tr. 18). Additionally, LaVern Rea, a former teacher, reported that Davis had an obvious problem acquiring and using information, but only a slight problem attending and completing tasks. (Tr. 19). However, she indicated that he had no problem interacting and relating with others, moving about and manipulating objects, or caring for himself. (Tr. 19). The ALJ assigned her opinion some weight. (Tr. 19).

Davis underwent cognitive testing with Jeffrey Karr, PhD in November of 2011. (Tr. 19). The ALJ assigned Dr. Karr's opinion considerable weight. (Tr. 19). Dr. Karr noted that Davis was subdued, somber, and non-spontaneous with some accompanying motor retardation. (Tr. 19). Davis' testing resulted in a full-scale IQ score of 66. (Tr. 19). Dr. Karr noted that the

test score was an underestimation of his abilities and more of a reflection of his lethargy, motor retardation, and low frustration tolerance. (Tr. 19).

Additionally, Davis underwent a psychological consultative examination with David R. Bucur, PhD in February of 2014. (Tr. 19). Dr. Bucur assigned a GAF score of 55, which indicated moderate symptoms. (Tr. 19). The ALJ assigned Dr. Bucur's opinion some weight. (Tr. 20). However, he did not opine any specific limitations. (Tr. 20). Additionally, Dr. Rabin (ME) testified as to Davis' impairments and how they limited his functioning. (Tr. 20). The ALJ assigned great weight to his opinion that Davis experienced moderate limitations in activities of daily living, mild limitations in social functioning, and moderate limitations in concentration, persistence, or pace. (Tr. 20).

At step four, the ALJ found that Davis had no past relevant work. (Tr. 20). Considering Davis' age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that he could perform, including janitor/cleaner II (1,000,000 jobs nationally and 47,000 jobs in Indiana), dishwasher (352,000 jobs nationally and 7,000 jobs in Indiana), and dye-weigher helper (50,000 jobs nationally and 2,000 jobs in Indiana). (Tr. 21). The ALJ found that Davis had not been under a disability, as defined in the Social Security Act, from July 28, 1995, through the date of this decision, June 8, 2016. (Tr. 22).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097

6

(7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported his decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." **Richardson v. Perales**, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting **Consol. Edison Co. v. NLRB**, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); see **Bates**, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported his findings with substantial evidence and if there have been no errors of law. **Roddy v. Astrue**, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." **Lopez ex rel Lopez v. Barnhart**, 336 F.3d 535, 539 (7th Cir. 2003).

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If he is, the claimant is not disabled, and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; see **Williams v. Colvin**, 757 F.3d 610,

613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

Davis has requested that the court reverse the ALJ's decision and award benefits, or in the alternative remand this matter for additional proceedings. In his appeal, Davis has argued that: (1) the ALJ erred in evaluating the medical opinions of Jeffrey Karr, Michael Rabin, and Adam Scartozzi; (2) the ALJ's RFC finding failed to address his moderate limitations in concentration, persistence, or pace; and (3) the ALJ's analysis of his subjective symptoms was improper.

Davis has argued that the ALJ erred in evaluating the medical source opinions. Thus, the RFC was not supported by substantial evidence. "The RFC is an assessment of what work-related activities the claimant can perform despite his limitations."

*Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* **20 C.F.R. § 404.1545(a)(1)** ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence—including statements from medical sources about what the claimant can still do—as well as "other evidence, such as testimony by the claimant or his friends and family." *Craft v. Astrue,* 539 F.3d 668, 676 (7th Cir. 2008); **20 C.F.R. § 404.1545(a)(3).**

The ALJ gave great weight to the opinions of Davis' therapist, Adam Scartozzi, and medical expert, Michael Rabin. The ALJ also assigned considerable weight to the opinion of Jeffrey Karr. The ALJ adopted Dr. Rabin's opinion in his RFC finding. Dr. Rabin opined that Davis would require jobs involving no contact with the general public, limited social demand, and only occasional, brief, and superficial contact with coworkers and supervisors. (Tr. 20, 60-61). Dr. Rabin further opined that Davis was precluded from performing teamwork and tandem tasks. (Tr. 20, 60-61).

However, Davis contends that the ALJ erred by failing to explain why, despite affording great weight to Scartozzi's opinion, he adopted some restrictions but not others. Davis asserts it was unclear whether the ALJ left favorable restrictions out of his report intentionally or unintentionally. Specifically, Davis has indicated that the ALJ failed to question the VE or include in the RFC his inability to handle routine work stress, meet deadlines, or handle criticism from superiors. He contends that the limitations in Scartozzi's report could have led to a finding of disability. Scartozzi concluded that if Davis had to work at any speed, or meet any deadlines,

causing stress such that he could not function, he would be unable to work. (Tr. 740). Moreover, the ALJ did not explain how Davis' low processing speed would limit his ability to maintain an appropriate work pace, despite giving Dr. Karr's opinion considerable weight.

The Commissioner has argued that Scartozzi is not an acceptable medical source whose opinion may be given controlling weight. **20 C.F.R. § 404.1513(a).** Additionally, Dr. Karr was a non-treating source. A non-treating source means a physician, psychologist, or other acceptable medical source who has examined the claimant but did not have an ongoing treatment relationship with him. **20 C.F.R. § 404.1502.** As a non-treating source, the ALJ was not required to assign controlling weight to Dr. Karr's opinion. *See* **White v. Barnhart,** 415 F.3d 654, 658 (7th Cir. 2005) (finding that a doctor who examined claimant once fits the definition of a non-treating source, and the ALJ is not required to assign controlling to weight to the opinion). Despite the Commissioner's argument, the ALJ chose to assign these opinions "great" and "considerable" weight.

The ALJ need not mention every piece of evidence, however, he has an "obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." **Denton v. Astrue,** 596 F.3d 419, 425 (7th Cir. 2010) (citing **Myles v. Astrue**, 582 F.3d 672, 678 (7th Cir. 2009)). Especially when the ALJ gives a medical opinion great weight, the ALJ must explain why limitations included in the opinion are not included in the RFC. Thus, the ALJ has failed to build an accurate and logical bridge from the evidence to his conclusion.

The ALJ's RFC assessment and the hypothetical posed to the VE must incorporate all of the claimant's limitations supported by the medical record. **Yurt v. Colvin**, 758 F.3d 850, 857 (7th Cir. 2014) (citing **O'Connor-Spinner v. Astrue**, 627 F.3d 614, 619 (7th Cir. 2010));

*Indoranto v. Barnhart*, 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."). That includes any deficiencies the claimant has in concentration, persistence, or pace. *Yurt*, 758 F.3d at 857; *O'Connor-Spinner*, 627 F.3d at 619 ("Among the limitations the VE must consider are deficiencies of concentration, persistence and pace."); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (indicating the hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'") (collecting cases). The most effective way to ensure that the VE is fully apprised of the claimant's limitations is to include them directly in the hypothetical. *O'Connor-Spinner*, 627 F.3d at 619.

The Commissioner has summarized the ALJ's hypothetical questioning of the VE that limited Davis to the follow: "occasional, brief, and superficial contact with co-workers and supervisors;" "no team work, no tandem tasks (which the ALJ explained involved work 'on an assembly line where you do a thing and the next person has to do something and keeping up the pace);'" "avoid concentrated exposure to pulmonary irritants such as gases, dust, fumes, poor ventilation;" "no contact with the general public;" and "retains sustained concentration, persistence, and pace necessary for simple work of a routine or repetitive type." (Tr. 81).

Davis contends that his limitations in persistence or pace were not adequately accommodated by simple, routine, and repetitive tasks. He asserts that the ALJ failed to account for his limitations despite noting that he had a borderline IQ and his "symptoms further limit his ability to concentrate and persist and maintain pace as often noted by his slow speech and responses." (Tr. 18). The Commissioner has argued that the ALJ accounted for Davis' limitations in concentration, persistence, or pace by excluding jobs that required teamwork or

11

tandem tasks. However, the ALJ never mentioned that restricting Davis to no teamwork or tandem tasks had any relation to Davis' limitations in persistence or pace. Rather, the ALJ found that "[h]e retains the sustained concentration, persistence and pace necessary for simple work of a routine and repetitive type. (Tr. 16). The Seventh Circuit repeatedly has rejected the notion that a hypothetical confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace. *Yurt v. Colvin,* 758 F.3d 850, 858–59 (7th Cir. 2014). On remand, the ALJ is directed to ask the VE questions that explicitly account for Davis' limitations in concentration, persistence, or pace.

Next, Davis has argued that the ALJ's analysis of his subjective symptoms was insufficient. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue,* 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must support his evaluation with specific reasons that are supported by the record. *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013). Under SSR 16-3p, an ALJ must assess the claimant's subjective symptoms rather than assessing his "credibility." SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).

The ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce his symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL

1119029 at *5.  In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding.  SSR 16-3p, 2016 WL 1119029, at *4, 9.  The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) The individual's daily activities;
>
> (ii) Location, duration, frequency, and intensity of pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) Type, dosage, effectiveness, and side effects of any medication;
>
> (v) Treatment, other than medication, for relief of pain or other symptoms;
>
> (vi) Other measures taken to relieve pain or other symptoms;
>
> (vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. § 404.1529(c)(3).**

The ALJ found that Davis' "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" (Tr. 17).  Davis has argued that the ALJ's belief that subjective complaints can be accepted only if "entirely consistent" with the evidence is legal error.  "However, the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if [she] otherwise points to information that justifies [her] credibility determination." ***Pepper v. Colvin***, 712 F.3d 351, 367–68 (7th Cir. 2013).

Davis contends that the ALJ did not discuss which statements he found consistent or inconsistent with the evidence in the record. He has indicated that the ALJ summarized his daily living activities but that he failed to explain why they were not consistent with the evidence. The ALJ noted that Davis cared for his personal hygiene, obtained a learner's permit, prepared meals, did light housework, shopped with his grandmother, and socialized with family. (Tr. 17). Additionally, as the Commissioner points out, the ALJ discussed Davis' former teacher's opinion that he had an obvious problem acquiring and using information, but only a slight problem attending and completing tasks, and no problem interacting with others, moving about and manipulating objects, or caring for himself. (Tr. 19). However, the ALJ failed to explain whether these activities were consistent or inconsistent with the limitations Davis indicated he was experiencing. *See **Jelinek v. Astrue**,* 662 F.3d 805, 812 (7th Cir. 2011) ("[An ALJ] must explain perceived inconsistencies between a claimant's activities and the medical evidence."). Rather, the ALJ just provided a broad summary of the evidence with no explanation for his finding.

The ALJ was required to perform a more thorough analysis. Thus, he failed to build a logical bridge between the evidence and his conclusion that Davis' subjective symptoms were not entirely consistent with the evidence in the record. The ALJ did not give specific reasons for his finding to make clear what allegations were or were not credible. ***Zurawski v. Halter***, 245 F.3d 881, 887 (7th Cir. 2001) (remanding where ALJ failed to "explain the inconsistencies" between a claimant's activities of daily living, his complaints of pain, and the medical evidence). On remand, the ALJ is directed to provide an explanation for his adverse subjective symptoms finding, including a comprehensive review of the SSR 16-3p factors and clear identification of the statements that are not entirely credible, if any.

Davis has requested that the court remand for an award of benefits. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." ***Allord v. Astrue*,** 631 F.3d 411, 415 (7th Cir. 2011). The Seventh Circuit has held that when an ALJ's decision is not supported by substantial evidence, the appropriate remedy is to remand for further proceedings unless the evidence before the court compels an award of benefits. ***Briscoe v. Barnhart*,** 425 F.3d 345, 355 (7th Cir. 2005). The record here does not warrant an award of benefits.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 26th day of February, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge